# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Tasmon Salter,                                    Case No. 20-cv-2253 (ECT/ECW)

        Petitioner,

v.                                                **REPORT AND RECOMMENDATION**

J. Fikes, *Warden FCI Sandstone*,

        Respondent.

---

This matter is before the Court on Tasmon Salter's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241.  (Dkt. 1.)  The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons stated below, the Court recommends that the Petition be dismissed without prejudice.

## I.    BACKGROUND

Salter was convicted of Possession with Intent to Distribute 50 Grams or More of Methamphetamine in the United States District Court for the Central District of Illinois and sentenced to prison on June 8, 2016.  (Dkt. 1 at 1; Dkt 8-1, Ex. A at 2.)[1]  Currently, Salter is incarcerated at the Federal Correctional Institution in Sandstone, Minnesota, serving a 92-month term of imprisonment, which is to be followed by 4 years of

---

[1]    Unless otherwise noted, all page numbers refer to the CM/ECF pagination.

supervision.  (Dkt. 1 at 1; Dkt. 2 at 2; Dkt. 8-1, Ex. A at 2.)  As of November 30, 2020, Salter was projected to be released on March 30, 2022 due to earned good conduct time. (Dkt. 1-1, Ex. C at 11; Dkt. 8-1, Ex. A at 1, 2.)

Salter alleges in his Petition that the Federal Bureau of Prisons ("BOP") has failed to apply his "Earned Time Credits" (also referred to as "Time Credits") under the First Step Act of 2018 ("FSA"), Pub. L. 115-391, 132 Stat. 5194, specifically 18 U.S.C. § 3632(d)(4).  (Dkt. 1 at 2, Dkt. 2 at 6, ¶¶ 17-18.)  The Court will not describe the specifics of the Earned Time Credit system in detail in this Report and Recommendation, though certain aspects will be addressed below as relevant to the Court's analysis. Briefly, the FSA "offers prisoners an opportunity to earn Time Credits applicable to their periods of [residential reentry center] placement, home confinement or supervised release, by participating in certain evidence-based recidivism reduction ('EBRR') programs and productive activities ('PAs')."  *Hare v. Ortiz*, No. CR 18-588-1(RMB), 2021 WL 391280, at *1 (D.N.J. Feb. 4, 2021); *see also id.* at *1-2, 4-5 (detailing the FSA's risk and needs assessment system).

Salter's Petition asserts that the BOP "has miscalculated [his] sentence by failing to apply the [Earned Time Credits] to [his] sentence due to the wrong interpretation of 18 U.S.C. § 3624 and § 3621(h)(1)" and that he is "entitled to a sentence credit of <u>220</u> days under the [FSA]."  (Dkt. 1 at 6, 7; *see also* Dkt. 2 at 2, ¶¶ 1-2, at 4, ¶¶ 10-11, at 6, ¶ 16 (supporting memorandum asserting same and specifying that Salter has accumulated 690 days of programming, which serves to reduce his sentence by 220 days).)  Salter contends that this means he should be eligible for release on September 1, 2021, and for home

2

detention on March 1, 2021.  (Dkt. 2 at 6, ¶ 17.)  He states that he has not filed a grievance or sought an administrative remedy and that such an action would be futile and is not required because his challenge is to the BOP's interpretation of a statute.  (Dkt. 1 at 2, 3; Dkt. 2 at 3, ¶ 6, at 4, ¶¶ 8-9.)

Respondent makes a number of arguments in opposition.  Respondent argues that the Petition should be dismissed because Salter failed to exhaust administrative remedies and because the Petition is premature for several reasons.  (Dkt. 7 at 15, 16-23.) Alternatively, Respondent argues that the Petition should be denied because the BOP has discretion in implementing the Earned Time Credit system, Salter is not eligible to apply any Time Credits, Salter has not earned any Time Credits, and because Salter has no statutory or constitutional right to apply Time Credits to gain an early release.  (*Id.* at 15, 24-31.)

## II.    APPLICABLE LAW

"Writs of habeas corpus may be granted by the Supreme Court, . . . the district courts and any circuit judge within their respective jurisdictions."  28 U.S.C. § 2241(a). The writ of habeas corpus under Section 2241 shall not extend to an individual unless "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  *Id.* § 2241(c)(3).  A prisoner may challenge the execution of his sentence through a § 2241 petition filed in the district where he is incarcerated.  *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002).  "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . ."  *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citation omitted).  Here, Salter is

incarcerated in this District and challenges the duration of his confinement (Dkt. 1 at 1, 6, 7; Dkt. 2 at 2 (paragraphs headed "Parties" and "Jurisdiction") (citations omitted)), and Respondent does not challenge the Court's jurisdiction. The Court finds that habeas jurisdiction is appropriate here. *See Ford v. Fikes*, No. 20-CV-00238 (PAM/HB), 2020 WL 4454929, at *2 (D. Minn. July 6, 2020) (citations omitted) (concluding that where "Petitioner is in custody, and he has challenged the duration of his confinement," "the Court has jurisdiction over the petition"), *R.&R. adopted*, 2020 WL 4449952 (D. Minn. Aug. 3, 2020).

However, a petitioner ordinarily must exhaust all available remedies prior to seeking habeas relief. *See Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009); *United States v. Chappel*, 208 F.3d 1069, 1069 (8th Cir. 2000) (per curiam). Exhaustion serves several important goals:

> (1) the development of the necessary factual background upon which the claim is based; (2) the exercise of administrative expertise and discretionary authority often necessary for the resolution of the dispute; (3) the autonomy of the prison administration; and (4) judicial efficiency from the settlement of disputes at the prison level.

*Mason v. Ciccone*, 531 F.2d 867, 870 (8th Cir. 1976) (footnotes omitted). Still, when exhaustion would be futile, the failure to exhaust may be excused. *See Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004). Additionally, a court may opt to address the

merits of an unexhausted habeas claim, because the exhaustion requirement is judicially created, not jurisdictional.  *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007).

### III.    ANALYSIS

For the reasons set forth in Section III.B, the Court recommends dismissal of the Petition without prejudice for failure to exhaust administrative remedies.  However, to clarify certain matters with respect to that analysis, the Court first addresses the date before which, based on the language of the FSA, a plaintiff may not earn time credits. *See* 18 U.S.C. § 3632(d)(4)(B)(i).

### A.    Interpretation of 18 U.S.C. § 3632(d)(4)(B)(i)

Respondent argues that the Petition should be denied on the merits for several reasons, including because "the Bureau has interpreted FSA time credits as only being available for EBRR programming and productive activities assigned and completed after January 15, 2020."  (Dkt. 7 at 27.)  Respondent relies on a rule proposed by the BOP which states: "FSA Time Credits may only be earned by an eligible inmate: [for an EBRR program or PA] that is assigned to the particular inmate based on his or her risk and needs assessment, and which the eligible inmate successful completes on or after January 15, 2020 . . . ."  85 Fed. Reg. 75268, 75272 (Nov. 25, 2020) (to be codified at 28 C.F.R. § 523.42(d)(1)).

In addition to relying on this proposed rule, Respondent argues:

This interpretation [of the FSA] is also reasonable because Congress has dictated that inmates may not earn time credits for successful completion of EBRR programming and productive activities completed "prior to the date of enactment of this subchapter."  18 U.S.C. § 3632(d)(4)(B).  While Subchapter D establishes July 19, 2019, as an effective date for the

development of the risk and needs assessment system, *see* 18 U.S.C. § 3632(a), Congress gave the Bureau to January 15, 2020, to begin to implement the system. *See* 18 U.S.C. § 3621(h)(1). Implementation includes completing an inmate's initial risk and needs assessment and assigning the inmate to EBRR programming and productive activities. *Id.*, § 3621(h)(1)(A). To allow inmates to earn FSA time credits for successful completion of EBRR programming or productive activities before the Bureau has assessed their risk and needs and assigned them to the programming is inconsistent with the congressional intent in enacting the FSA. It is reasonable and statutorily supportable for the Bureau to use January 15, 2020, as the starting date of when time credits can be earned. *See* 18 U.S.C. § 3621(h)(1).

(Dkt. 7 at 27-28.)

Respondent appears to be arguing that the FSA **precludes** prisoners from earning time credits for programs completed before January 15, 2020. (*See generally id.* (discussing whether the BOP's proposed rule and statutory interpretation are reasonable).)

Respondent also contends that the BOP's interpretation of the statute is entitled to *Chevron* deference because Congress has charged the BOP with the responsibility of implementing the FSA. (*Id.* at 24.) As the U.S. Supreme Court set forth in *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. 837, 842 (1984) (footnotes omitted).

"Courts use 'traditional tools of statutory construction' to determine whether Congress has unambiguously expressed its intent." *Melgar v. Barr*, 379 F. Supp. 3d 783, 786 (D. Minn. 2019) (quoting *Chevron*, 467 U.S. at 843 n.9), *aff'd sub nom. Velasquez v. Barr*, 979 F.3d 572 (8th Cir. 2020).  "The first question in interpreting a statute is 'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'"  *United States v. Kowal*, 527 F.3d 741, 746 (8th Cir. 2008) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).  "If so we apply the plain language of the statute."  *Id.*  A court "look[s] beyond the statute's text only if it is ambiguous."  *Id.*

Here, the FSA states:

AVAILABILITY.—A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed—

(i) **prior to the date of enactment of this subchapter**; or

(ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a).

18 U.S.C. § 3632(d)(4)(B) (emphasis added).  Accordingly, the relevant date for purposes of whether Earned Time Credits are not available because a program was completed too early is "the date of enactment of this subchapter," that is, subchapter D, "Risk and Needs Assessment System," of Title 18, Part II, Chapter 229.

As Respondent notes, "The First Step Act (FSA) (P.L. 115-391) [was] enacted into law on December 21, 2018."  (Dkt. 7 at 2.)  The FSA includes subchapter D, where

§ 3632 appears.  *See* Pub. L. 115-391, 132 Stat. 5194.  The meaning of the phrase "the date of enactment of this subchapter" in subchapter D of the FSA therefore should be uncontroversial; it means "December 21, 2018."  Indeed, Respondent interpreted the phrase "the date of enactment of this subchapter" in another subsection of subchapter D, 18 U.S.C. § 3632(a), to mean December 21, 2018 when explaining that the risk and needs assessment system was due on July 19, 2019—which is "[n]ot later than 210 days after the date of enactment of this subchapter."[2]  (Dkt. 7 at 2 ("Regarding time credits, Congress specifically directed the Attorney General to develop a risk and needs assessment system no later than 210 days after the enactment of the FSA (July 19, 2019). 18 U.S.C. § 3632(a).").)  "When two statutory provisions employ the same word in close proximity, the 'normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning' carries even greater weight."  *Kowal*, 527 F.3d at 746-47 (quoting *Comm'r v. Lundy*, 516 U.S. 235, 250 (1996)).  Respondent has not given any reason why "the date of enactment of this subchapter" should be interpreted to mean two different dates when used within the same section, nor has Respondent identified any ambiguity in the phrase.  The phrase "the date of enactment of this subchapter" in § 3632(d)(4)(B)(i) plainly means December 21, 2018, and so the Court need not consider the BOP's interpretation.  *See Melgar*, 379 F. Supp. 3d at 788 ("interpret[ing statute] exactly as written" and concluding that "[b]ecause the

---

[2]      July 19, 2019 is 210 days after December 21, 2018.

statute is clear and unambiguous, the Court need not consider the agency's interpretation under step two of the *Chevron* deference analysis").

Respondent, however, argues, that "[i]t is reasonable and statutorily supportable for the [BOP] to use January 15, 2020, as the starting date of when time credits can be earned" based on the BOP's proposed rule and because "Congress gave the Bureau to January 15, 2020, to begin to implement the system." (Dkt. 7 at 27-28 (citing 18 U.S.C. § 3621(h)(1)).) The subsection Respondent relies on gives the BOP until January 15, 2020 (180 days after the July 19, 2019 deadline for the risk and needs assessment system) to "implement and complete the initial intake risk and needs assessment for each prisoner"; "begin to expand the effective evidence-based recidivism reduction programs and productive activities it offers" and add new programs and activities; and "begin to implement the other risk and needs assessment tools necessary to effectively implement the System over time, while prisoners are participating in and completing the effective evidence-based recidivism programs and productive activities." 18 U.S.C. § 3621(h)(1). That subsection says nothing about when Earned Time Credits become "available" or whether a program was completed too early to count for Earned Time Credits.

Indeed, another court has rejected the argument that "the date of enactment of this subchapter" in § 3632(d)(4)(B)(i) means January 15, 2020 based on the BOP's proposed rule and § 3621(h)(1). *See Hare*, 2021 WL 391280, at *6 ("The Court finds no indication in the statute that the ordinary meaning of 'enactment of this subchapter,' in subsection (d) should not be consistent with the same phrase used in subsection (a)."). Rather, "18 U.S.C. § 3632(d)(4)(B)(i) unambiguously directs that '[a] prisoner may not earn time

credits . . . for an evidence-based recidivism reduction program that the prisoner successfully completed . . . prior to' December 21, 2018." *Id.* at *7 (alterations in *Hare*) (concluding that there is no ambiguity in the statute and no *Chevron* analysis is necessary); *see also Simpson*, 2020 WL 8813664, at *10 n.10 (citing 18 U.S.C. § 3632(d)(4)(B)(i)) (noting that "petitioner may not earn credits for any [EBRR] program that he successfully completed prior to the date of the enactment of the FSA," so "to the extent that the petitioner may be seeking time credits for any programs completed prior to December 21, 2018, the same would be clearly misguided"). In sum, what the FSA precludes is prisoners earning time credit for programs completed before December 21, 2018 (the date that subchapter D was enacted)—not January 15, 2020.

It is possible that Respondent is arguing that the FSA permits (but does not require) the BOP to select a January 15, 2020 start date for programs to be eligible for Earned Time Credit. One court has found both that "[t]he FSA explicitly precludes an inmate from earning time credits for EBRR programs the inmate successfully completed prior to the enactment of the First Step Act," *Kurti v. White*, No. 1:19-CV-2109, 2020 WL 2063871, at *4 (M.D. Pa. Apr. 29, 2020), yet accepted the argument that pre-January 15, 2020 credits were ineligible because the BOP had until January 15, 2020 to implement the FSA, *see id.* at *4-5 ("[B]ecause the completion dates for these programs range from 2004 through 2019, which is prior to the January 15, 2020 implementation of the FSA, they are not eligible for FSA credit."). *See also Herring v. Joseph*, No. 4:20CV249-TKW-HTC, 2020 WL 3671375, at *4 (N.D. Fla. June 22, 2020) ("Indeed, because the courses for which Petitioner seeks credit occurred between November 2018

and December 2019, before the January 15, 2020 date, they would not count towards his First Step Act credit."), *R.&R. adopted in part, rejected in part on other grounds*, 2020 WL 3642706 (N.D. Fla. July 6, 2020).  But the Court understands Respondent here to be making the same argument made in *Hare*, where the "Respondent urge[d] the Court to interpret 'the date of enactment of this subchapter' in § 3632(d)(4)(B)(i) to mean January 15, 2020, as the BOP has proposed, pending public comment for 28 C.F.R. § 523.42(d)(1))."  2021 WL 391280, at *6.  For the reasons stated above, the Court concludes that "the date of enactment of this subchapter" in § 3632(d)(4)(B)(i) unambiguously means December 21, 2018.  To the extent Respondent wishes to argue that the BOP was **permitted** to select the later date of January 15, 2020 for eligibility, the Court declines to address that issue based on the current briefing.

## B.    Exhaustion

The Court next considers exhaustion.  Salter admits that he has not filed a grievance or sought an administrative remedy.  (Dkt. 1 at 3.)  Salter asserts that the BOP's refusal to credit his Earned Time Credits is due to an improper interpretation of the statute, and since his Petition challenges that interpretation, exhaustion would be futile, and his Petition is exempt from the exhaustion requirement.  (Dkt. 2 at 2-4, ¶¶ 1-3, 8-9.)  Salter relies on a district court decision from the District of New Jersey in support of his argument, arguing "that court granted the petitioner's § 2241 motion for similar reasons."  (*Id.* at 3, ¶ 5 (citing *Goodman v. Ortiz*, No. CV 20-7582 (RMB), 2020 WL 5015613, at *1 (D.N.J. Aug. 25, 2020)).)

Respondent argues that Salter's "argument presents too narrow a reading of exhaustion" and that requiring exhaustion "will create an administrative record which would aid the Court in reviewing Salters' [sic] Petition." (Dkt. 7 at 17.)  Respondent lists "[s]everal issues [that] must be resolved prior to the application of FSA time credits," in addition to the issue of whether to ultimately apply credits toward early placement into supervised release or toward a pre-release placement.  (*Id.*)  Some of these concerns appear overstated, as certain issues Respondent identifies as requiring resolution are already resolved.  For example, Respondent identifies Salter's "eligibility to earn credits" as an issue that must be resolved before application of FSA time credits (*id.*), but then states that Salter is eligible to earn FSA time credits (*id.* at 12 & n.7) but not eligible to apply them (*id.* at 21).  Respondent also identified "what [Salter's] needs might be" as another issue needing resolution (*id.* at 17), but the BOP was required "to conduct an initial assessment of an inmate's risk of recidivism and criminogenic needs" by January 15, 2020 (*id.* at 3 (citing 18 U.S.C. § 3621(h)(1)(A))), well before Salter filed his Petition, and indeed Respondent describes the results of Salter's needs assessment (*id.* at 13).

Nonetheless, the Court concludes that exhaustion should not be excused here, as the Petition does not merely present questions of statutory interpretation, that is, pure questions of law, but rather presents several factual disputes, in addition to questions of the proper application of the law to those disputed facts.  *Compare Donnelly v. Fed. Bureau of Prisons*, No. CIV. 10-3105 DWF/JSM, 2012 WL 2357511, at \*4-5 (D. Minn. May 30, 2012) (noting that one of the primary purposes of exhaustion is to develop the relevant factual and legal issues, as "[t]he administrative remedies process hones the

12

factual record, and brings clarity to the legal issues presented in the case," and concluding that the purported challenge to a BOP policy "should have been fine-tuned and vetted before being brought into federal court"), *R.&R. adopted*, 2012 WL 2357490 (D. Minn. June 20, 2012), *with Gurzi v. Marques*, No. 18-CV-3104-NEB-KMM, 2019 WL 6481212, at *2 (D. Minn. Oct. 10, 2019) (citing *Donnelly*) (declining to recommend dismissal for failure to exhaust because, in part, "the development and crystallization of the factual record"—"one of the important functions served by exhaustion"—was not implicated as petitioner's challenge did "not address any factual decisions the BOP made which are unique to his case"), *R.&R. adopted*, 2019 WL 6464838 (D. Minn. Dec. 2, 2019). For this reason, the Court finds Salter's reliance on *Goodman* unpersuasive. In *Goodman*, the respondent "either admitted or was silent to" several critical facts, including the petitioner's eligibility for Earned Time Credits, the outcome of the petitioner's needs assessment, the eligibility of the petitioner's assigned programming for earning credit under the FSA, the petitioner's completion of the programming, the number of days of credit the petitioner accumulated, and the number of days by which the credit reduced his sentence, among others. 2020 WL 5015613, at *2. The only dispute was the statutory construction of the FSA, namely whether "January 15, 2022 is [] the date when the program 'takes effect,' as Respondent claim[ed]" or "is the 'outer limit on when BOP must make programming and the resulting credits available to "all" prisoners,'" as the petitioner claimed. *Id.* at *4 (quoting parties' Answer and Reply (Reply quoting 18 U.S.C. § 3621(h)(2))). For this reason, the court in *Goodman* rejected the respondent's argument that the petition should be dismissed for failure to exhaust

administrative remedies.  2020 WL 5015613, at *2-3.  The court then concluded, "The BOP's position that a prisoner can complete [his programming for Earned Time Credits] before January 15, 2022 with no benefit to the prisoner is contrary to the statutory language," and granted habeas relief of directing the BOP to immediately apply the petitioner's (undisputed) days of Earned Time Credit.  *Id.* at *6.

Here, in contrast to *Goodman*, there are a number of factual questions that would be best addressed in the first instance by the administrative remedy process.  For example, Salter asserts that he has completed 690 days of EBRR programming and/or PAs and so is entitled to 220 days of Earned Time Credit (Dkt. 2 at 4-5, ¶¶ 10-12), while Respondent asserts that Salter has not completed *any* programming that would earn him Earned Time Credits (Dkt. 7 at 29).  Further, Respondent disputes the eligibility of Salter's claimed programming for earning credit under the FSA and Salter's completion of programming, as well as how to apply any time earned.  (*See* Dkt. 7 at 13, 29-31.)  The Court therefore concludes, as many other courts have when addressing similar habeas petitions, that Salter should be required to exhaust his administrative remedies.  *See, e.g.*, *Wallace v. Garrido*, No. 1:20-CV-476, 2021 WL 1534139, at *1 (E.D. Tex. Apr. 16, 2021); *Linot v. United* States, No. CV 5:21-025-DCR, 2021 WL 265264, at *1 (E.D. Ky. Jan. 26, 2021); *Workman v. Cox*, No. 4:20-CV-04197-LLP, 2021 WL 1080396, at *2-3 (D.S.D. Jan. 13, 2021) (distinguishing *Goodman*), *R.&R. adopted*, 2021 WL 1060205 (D.S.D. Mar. 18, 2021); *O'Bryan v. Cox*, No. 4:20-CV-04183-LLP, 2021 WL 983241, at *3 (D.S.D. Jan. 12, 2021) (same), *R.&R. adopted sub nom. O'Bryan, Jr. v. Cox*, 2021 WL 977792 (D.S.D. Mar. 16, 2021); *Simpson v. Gomez*, No. 1:19CV68, 2020 WL 8813664,

14

at *10 (N.D. W. Va. Sept. 17, 2020), *R.&R. adopted*, 2021 WL 320832 (N.D. W. Va. Feb. 1, 2021).

The Court recognizes that Salter argues that if his Earned Time Credits were correctly applied, he "would be eligible for release on September 1, 2021 and a home detention date of March 1, 2021." (Dkt. 2 at 6, ¶ 17.) An imminent or past-due release date could counsel in favor of excusing a failure to exhaust and addressing the merits. *See Butler v. Bradley*, No. CV2011211DMGRAO, 2021 WL 945252, at *3 (C.D. Cal. Feb. 22, 2021) (waiving exhaustion and addressing merits of petitioner's claim to Earned Time Credit and noting that "if Petitioner's claim were meritorious, he would suffer irreparable injury from his continued incarceration"); *Ellis v. Hollingsworth*, No. CIV. 043355JRTRLE, 2005 WL 1323964, at *2 (D. Minn. May 10, 2005) ("'[E]xhaustion of administrative remedies may not be required when . . . (2) irreparable injury may occur without immediate judicial relief . . . .'") (internal marks omitted) (quoting *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003), *as amended* (July 24, 2003)); *see also Taylor v. Fikes*, No. 20-CV-1364 (PJS/ECW), 2020 WL 8713685, at *4 (D. Minn. Dec. 10, 2020), *R.&R. adopted*, 2021 WL 363855 (D. Minn. Feb. 3, 2021) (concluding that since release date was several years in the future, even if petitioner's positions were correct, "for purposes of determining whether Taylor is properly in prison now, the dispute . . . is merely academic," and that "[a]s long as the BOP updates Taylor's sentence computation far enough in advance to make sure he is timely released under the First Step Act, he cannot secure habeas relief"); *Hernandez-Pacheco v. Fisher*, No. CIV. 10-2088 JRT/TNL, 2011 WL 4929417, at *6 (D. Minn. Sept. 12, 2011) (citing *Bania v. Fed.*

*Bureau of Prisons*, Civil No. 10-2212 (SRN/FLN), 2011 WL 882096, at *2 n.2 (D. Minn. Feb. 24, 2011)) ("[A]n inmate is not excused from first exhausting his administrative remedies where the inmate's right to pursue an administrative appeal remains available and pursuing the administrative appeal in no way delays an imminent release date."), *R.&R. adopted*, 2011 WL 4808187 (D. Minn. Oct. 11, 2011).

Here, however, it is doubtful that Salter is entitled to all of the Earned Time Credit, and thus the release date, that he claims. First, Salter's records indicate that much of the programming he appears to be relying on was completed before December 21, 2018. (*See* Dkt. 1-1, Ex. C (titled "Supporting documents of earned time credits" and showing some courses occurring in 2019 and 2020 but ten occurring before December 21, 2018); Dkt. 8-5, Ex. E (records submitted by Respondent showing same); Dkt. 8-7, Ex. G (record submitted by respondent showing course occurring in 2020); Dkt. 2 at 4, ¶¶ 10-11, at 6, ¶ 17.) Given that the bulk of that programming occurred before December 21, 2018, it appears unlikely that Salter is entitled to as much credit as he claims (even if the programs constitute EBRR programming or PAs otherwise eligible as Earned Time Credits under the FSA).

Moreover, it also appears that Salter would not be eligible for release under the FSA's Earned Time Credit system because, at least at the time of the Petition and Response, his current risk for recidivism had been assessed as "medium." (Dkt. 1-1, Ex. A at 2; Dkt. 8-2, Ex. B; Dkt. 8-3, Ex. C.) Under 18 U.S.C. § 3624(g)(1)(B) and (D), a prisoner is not eligible for prerelease custody or supervised release unless he has been

assessed as minimum or low recidivism risk.[3]  Salter acknowledges that his risk has been

assessed as medium (Dkt. 2 at 5, ¶¶ 13-14), but does not address the provisions of

§ 3624(g)(1).  Respondent argues that Salter's petition should not prevail for this reason,

both as a matter of ripeness (Dkt. 7 at 21-22) and of the merits of Salter's eligibility to

apply Earned Time Credits (*id.* at 28-29).

For these reasons, the Court concludes that Salter will not suffer imminent harm if

the Petition is dismissed without prejudice so he can exhaust administrative remedies.

Moreover, these disputes demonstrate the need for Salter to pursue administrative

remedies so he can return with a fully developed record, if necessary.  Then, if Salter still

seeks relief from the Court, there would be a complete administrative record.  The Court

therefore recommends dismissing the Petition without prejudice for failure to exhaust

administrative remedies.[4]

---

[3]    It appears that there may be an avenue for a prisoner without a minimum or low recidivism risk to be eligible for release.  *See* 18 U.S.C. § 3624(g)(1)(B) ("a demonstrated recidivism risk reduction *or* has maintained a minimum or low recidivism risk") (emphasis added); *id.* § 3624(g)(1)(D) ("(I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; *or* (II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination . . . ") (emphasis added).  But Salter does not contend that these provisions apply to him.

[4]    Given the Court's recommendation, the Court does not address several of the issues raised in the Petition and Response, such as whether the BOP is not required to apply Earned Time Credits before January 15, 2022.  There is some disagreement among district courts on whether the BOP's position regarding the January 15, 2022 deadline is correct and consequently whether claims like Salter's are ripe.  *See Cohen v. United States*, No. 20-CV-10833 (JGK), 2021 WL 1549917, at *3 (S.D.N.Y. Apr. 20, 2021) (collecting cases and concluding that petition is premature and claim is not ripe) ("The overwhelming majority of courts to have considered this issue have agreed with the Government's view."); *Butler*, 2021 WL 945252, at *3 ("Courts have divided on the

## IV.    <u>RECOMMENDATION</u>

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED THAT:**

1.     Tasmon Salter's Petition for a Writ of Habeas Corpus Under 28 U.S.C.

§ 2241 (Dkt. 1) be **DENIED** and that this action be **DISMISSED WITHOUT**

**PREJUDICE**.


DATED: May 5, 2021                                    *s/Elizabeth Cowan Wright*
                                                      ELIZABETH COWAN WRIGHT
                                                      United States Magistrate Judge


## <u>NOTICE</u>

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).

---

issue of whether claims for FSA credits are ripe.") (citations omitted).  The parties and the Court will benefit from additional development of the law in this area if Salter brings a new petition after exhausting his administrative remedies.